[No. A077515. First Dist., Div. Five. Feb. 5, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY LEE BECHLER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, part II of this opinion is not certified for publication.

**COUNSEL**

Nella Bertin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Peggy S. Ruffra and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HANING, J.**—Rodney Lee Bechler appeals his conviction by court trial of three counts of assault with a firearm on a firefighter (Pen. Code,[2] § 245, subd. (d)(1)), with personal use of a firearm (§ 12022.5, subd. (a)). He contends there is insufficient evidence that the victims were firefighters under section 245, subdivision (d)(1), and that the court erred in imposing the upper term.

### Background

Approximately 4:30 p.m. on April 18, 1996, Firefighter/Engineer Steve Elledge, Captain Robert Glankler and Firefighter/Paramedic Emad Guirguis, members of the Vacaville Fire Department, were dispatched to appellant's home regarding a reported drug overdose. After parking the fire engine Elledge, Glankler and Guirguis approached a young girl in the driveway who directed Elledge and Glankler to appellant, her father, who was inside the house. Elledge knocked on the front door and said, "Fire Department." After receiving no response he knocked again and repeated the announcement. Appellant's face quickly appeared in a side window next to the door, then disappeared. Elledge again yelled "Fire Department," and received no response. Elledge and Glankler sensed that something was "not right," and began backing away from the front door. As they did so appellant emerged from the house with a rifle with the barrel pointed upward. He took a few steps forward, lowered the rifle and pointed it in the general direction of the victims. He had no trouble maneuvering his way through the front door.

After Elledge saw the gun lowering, he turned, ran to the fire engine for cover, and heard appellant fire three shots. He then saw appellant standing in his front yard with the rifle. Appellant briefly reentered his house, then came back out with the rifle, "methodical[ly]" scanned the streets, with no apparent balance or gait problems, and ultimately entered his garage and closed the door.

In addition to being a firefighter, Glankler was trained as an emergency medical technician and paramedic and was prepared to respond to persons who had ingested controlled substances. When appellant began firing, Glankler took cover behind a pickup truck. After hearing the second shot he realized he was bleeding from his hands, elbow, arm and behind his ear. The second shot had hit the pickup truck, and its fragments struck Glankler, resulting in 15 to 20 fragments embedded in his arm and shoulder. As a

---

[2]Unless otherwise indicated, all further section references are to the Penal Code.

result of his injuries, Glankler suffered residual numbness, tingling and lack of strength.

Guirguis testified that fire department paramedics respond to emergency calls, rendering basic and advanced life support to victims. He said that prior to the shooting, Kaiser Hospital had asked them to respond to appellant's home regarding a drug overdose.

After the shooting a police perimeter was set up around appellant's home and a SWAT team was deployed. When a police negotiator contacted appellant by phone, his voice was slurred and "mumbled," and he said he could not get up or walk and wanted to die. The SWAT team later entered the house and found appellant lying on the floor with his head moving and fingers twitching.

Appellant was charged with three counts of assault on a firefighter based on his shooting at Elledge, Glankler and Guirguis.

## DISCUSSION

### I

Appellant contends there is insufficient evidence to support his conviction of assault with a firearm on a firefighter because the victims were not engaged in the specific conduct required to invoke criminal responsibility under the statute with which he was charged.

Section 245, subdivision (d)(1) provides: "Any person who commits an assault with a firearm upon the person of a . . . firefighter, and who knows or reasonably should know that the victim is a . . . firefighter engaged in the performance of his or her duties, when the . . . firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years."

For purposes of section 245, subdivision (d)(1), a "firefighter" is defined by section 245.1, which states: "As used in [Section 245], 'fireman' or 'firefighter' includes any person who is an officer, employee or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, whether such person is a volunteer or partly paid or fully paid, *while he or she is actually engaged in firefighting, fire supervision, fire suppression, fire prevention, or fire investigation.*" (Italics added.)

The question is whether the victims were acting as firefighters as statutorily defined.

Appellant contends that because the victims were not engaged in any of the firefighting duties enumerated in section 245.1, but were acting as paramedics or rescue personnel, they did not have the status required for his violation of section 245, subdivision (d)(1). The People rely on the fact that section 245.1 provides that " 'fireman' " or " 'firefighter' " "*includes*" (italics added) persons involved in firefighting duties, suggesting that the enumerated duties are not exclusive. They note that the word "includes" is ordinarily a term of enlargement rather than limitation (*Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560]), and argue that the "Legislature's use of the word 'includes' can only reflect legislative intent to identify some (perhaps even most), but not all of the activities which the word 'firefighter' covers."

■ Where statutory language is clear and unambiguous and serves a rational purpose, there is no need for statutory construction " 'and courts should not indulge in it.' [Citation.]" (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934], italics omitted; *People* v. *Turner* (1995) 40 Cal.App.4th 733, 740 [47 Cal.Rptr.2d 42].)

■ The language of section 245.1 is clear and unambiguous, and capable of interpretation without resort to statutory construction. Contrary to the People's contention, the word "includes" does not mean that firefighters who are assaulted are protected under section 245, subdivision (d)(1) regardless of the activity in which they are engaged at the time of the assault. It means that persons who are associated with a fire department or fire protection or firefighting agency of one of the public entities mentioned in section 245.1, regardless of their official job description or how they are compensated, are protected under section 245, subdivision (d)(1) if at the time of the assault they are engaged in "firefighting, fire supervision, fire suppression, fire prevention or fire investigation."

"Includes" modifies only the clause directly following it. That clause only describes the firefighter's association with the enumerated public entities mentioned in section 245.1. The next clause beginning "while he or she is actually engaged in . . ." is a delimiting clause, establishing the particular activity which is a necessary condition precedent to "firefighter" status under section 245.1.

For example, "volunteer or partly paid or fully paid" persons engaged by a fire department are firefighters for purposes of section 245.1 if at the time

of the assault they are engaged in "firefighting, fire supervision, fire suppression, fire prevention, or fire investigation." Clearly, not even firefighters are protected under section 245, subdivision (d)(1) if at the time of the assault they are not engaged in the statutorily defined firefighting duties. This is demonstrated by the fact that separate criminal offenses involve the assault of or interference with emergency rescue personnel. (See §§ 148 [resisting or obstructing public officer, peace officer, or emergency medical technician]; 148.2 [interfering with discharge of duty by firefighter or emergency rescue personnel].)

The first paragraph of section 245.1 excludes emergency rescue personnel and emergency rescue activities from its definition of "firefighter" for purposes of section 245, subdivision (d)(1). However, the second paragraph of section 245.1 provides: "As used in Section 148.2 [interfering with discharge of duty by firefighter or emergency rescue personnel], 'emergency rescue personnel' means any person who is an officer, employee or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, whether such person is a volunteer or partly paid or fully paid, while he or she is actually engaged in the on-the-site rescue of persons or property during an emergency as defined in subdivision (c) of Section 148.3."

Thus, section 245.1 expressly refers to "emergency rescue personnel" of a fire department or firefighting agency, but *only* for purposes of section 148.2—interfering with the discharge of duty by a firefighter or emergency rescue personnel, a misdemeanor. We must presume that had the Legislature intended to include fire department personnel conducting emergency rescue activities within its enumerated list of persons who are "firefighters" for purposes of section 245, subdivision (d)(1), as the People contend, it would have expressly done so.

Consequently, the evidence is insufficient to establish that the victims in this case were acting as firefighters under section 245, subdivision (d)(1).

■ Where an offense cannot be committed without necessarily committing another offense, the latter is the necessarily included offense. (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].) ■ Here, there is ample evidence that appellant assaulted his victims with a firearm, and such evidence is sufficient to sustain his conviction for assault with a firearm (§ 245, subd. (a)(2)), a lesser included offense of assault with a firearm on a firefighter.

If the evidence shows the defendant not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a

lesser crime included therein, the court may modify the judgment accordingly, without granting or ordering a new trial. (§ 1181, subd. 6; *People* v. *Matian* (1995) 35 Cal.App.4th 480, 487 [41 Cal.Rptr.2d 459].) "The purpose for allowing an appellate court to modify the judgment to a lesser included offense is to 'obviate the necessity of a new trial when the insufficiency of the evidence only goes to the degree of the crime.' [Citation.]" (*Id.* at p. 487.)

Accordingly, we modify the judgment to reflect a conviction of three counts of the lesser and necessarily included offense of assault with a firearm (§ 245, subd. (a)(2)).

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment is modified to reflect a conviction of three counts of assault with a firearm under section 245, subdivision (a)(2) in lieu of assault with a firearm on a firefighter. Since appellant does not claim error in the court's finding that he personally used a firearm, and substantial evidence supports such finding, it is also affirmed. The matter is remanded for resentencing.

Peterson, P. J., and Jones, J., concurred.

---

*See footnote 1, *ante*, page 373.