[No. A079214. First Dist., Div. Five. July 2, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
KRISTEN LEIGH BRAZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of parts I.B. and II.

COUNSEL

James Joseph Lynch, Jr., for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Ross C. Moody, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JONES, J.**—In this case we are called upon to interpret Vehicle Code section 20001, subdivision (b)(2), which prescribes enhanced penalties for a conviction of the crime of hit-and-run in violation of Vehicle Code 20001, subdivision (a), when that violation "results in death or permanent, serious injury . . . ."

Vehicle Code[1] section 20001, subdivision (a) provides: "(a) The driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself, or in death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." Sections 20003 and 20004 essentially require drivers to render reasonable aid to the injured person and to furnish identification to that person and law enforcement authorities. In lay terms, section 20001, subdivision (a) describes the crime of hit-and-run.

The penalties for violating subdivision (a) are set forth in section 20001, subdivision (b). Subdivision (b)(1) provides: "Except as provided in paragraph (2), any violation of subdivision (a) shall be punished by imprisonment in the state prison, or in the county jail for not more than one year, or by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or by both fine and imprisonment." Subdivision (b)(2) prescribes more severe penalties under certain limited circumstances: "Any violation of subdivision (a) *which results in death or permanent, serious injury* shall be punished by imprisonment in the state prison for two, three, or four years, or in the county jail for not less than 90 days nor more than one year, or by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or by both fine and imprisonment. However, the court may, in the interests of justice and for reasons stated in the record, reduce or eliminate the minimum imprisonment required by this paragraph." (Italics added.)

---

[1]All further statutory references are to the Vehicle Code except where otherwise indicated.

The appellant in this case, Kristen Leigh Braz, was the driver of a pickup truck that was involved in an accident in which Gloria Washington was seriously injured. A jury found appellant guilty of a felony violation of section 20001, subdivision (a). The jury also found true a special allegation that Washington suffered permanent, serious injuries within the meaning of subdivision (b)(2). Based on that finding, the trial court placed appellant on three years probation pursuant to subdivision (b)(2).

On appeal, appellant does not challenge the sufficiency of the evidence supporting the jury's guilty verdict on the charge of violating section 20001, subdivision (a). She instead raises several instructional errors that we conclude lack merit. We therefore affirm the conviction.

Appellant also contends, however, that the trial court erred by denying her motion to dismiss the aforementioned special allegation because there was no substantial evidence that appellant's violation of section 20001, subdivision (a) proximately caused Washington's injuries to be permanent and serious. We agree and conclude that the trial court erred by imposing punishment on appellant pursuant to subdivision (b)(2). We therefore vacate the trial court's imposition of probation and remand for further proceedings in accordance with the views expressed in this opinion. In addition, we reject appellant's contention that we should reduce her offense from a felony to a misdemeanor. On remand, appellant may renew her motion before the trial court.

## BACKGROUND

The accident which resulted in appellant's conviction and Washington's injuries occurred on October 4, 1996. On that day, appellant and Washington were drawn into a domestic dispute between appellant's friend, Stacy Williams, and Stacy's estranged husband, Randy Williams.

Randy has custody of the couple's two daughters, Ashley and Amber. On the afternoon of October 4, 1996, the girls were at the home of Annette Sandford, Randy's mother, in Vacaville, California. Randy's stepfather, Jeffrey Sandford, Randy's brother, Aric Downs, and Aric's girlfriend, Rickshella Harrison, were also at the house.

Appellant had driven Stacy to Annette's home in appellant's pickup truck because Stacy wanted her children for the weekend. When they arrived, Stacy knocked on the door and Ashley answered. Ashley went outside with Stacy and Amber followed them. Both girls got into the cab of appellant's truck, which had extra seats behind the main seats.

Annette and Aric called Randy on the telephone and told him that Stacy was there and that he should come over. When Randy arrived, he saw his daughters in appellant's truck. He and Stacy began arguing over whether Stacy could take the girls with her. Randy told his daughters to get out of appellant's truck, but Stacy walked back to the passenger side of the truck, pushed the seat back so the girls could not leave, and sat down on the seat. Appellant had been sitting in the truck all this time. Randy, sensing that appellant and Stacy were about to leave, leaned in and "kind of sat" on Stacy.

Washington was Randy's girlfriend at the time of this incident. She had arrived at Annette's home before the argument began and had gone inside. Washington and Annette, who was also inside, had decided to try to get Ashley and Amber back in the house. When they went outside, however, Randy was already arguing with Stacy. They walked down the driveway and stood near appellant's truck. When Randy and Stacy began fighting inside the truck, Annette threatened to call the police. In response, appellant started the truck. Randy jumped out.

As the truck pulled away, Washington grabbed the still-open passenger-side door. She began running alongside the truck but lost her balance. She fell but kept her grip on the truck and was dragged along the ground. Aric testified that he heard Washington say "No," then she lost her grip on the truck. Both Jeffrey and Aric saw Washington fall to the ground. The right rear tire of appellant's truck ran over or struck Washington's head so that the truck bounced in the air. Appellant continued driving away.

Aric testified that he saw Stacy, Ashley, and Amber looking out the rear window of appellant's truck as this was happening, but did not see appellant turn around. Mary Willis, a neighbor of Annette's, testified that she saw appellant looking in her rear view mirror as she sped down the street. Willis testified that as the truck left, she looked up the street and could see a body lying in the street.

Ashley testified that she saw Washington grab on to appellant's truck and then get run over. She testified that she felt a bump right after Washington lost her grip on the truck. She also testified that after the truck bounced appellant said in a loud voice, "Oh my God."

Appellant testified that when she drove away from Annette's house, the children and Stacy were all yelling at her to go. At that point she could see Randy but no one else. She did not feel a bump or the wheels of her truck leave the road. She did not see anyone trying to catch her attention to stop.

She did not hear Washington yell "No." She testified that she may have said "Oh my God," but that she was only reacting to the situation in general and not to anything that happened to Washington. She also testified that she did not look in her rear view mirror as she drove away but only did so when she reached a stop sign further down the street.

Appellant claimed she did not know what happened to Washington at the time she left Annette's house, and that she first learned of the accident after she and Stacy had driven all the way to El Dorado County and called Stacy's mother, who told them what had happened. She testified that she became so distraught she was unfit to drive and could not return to Vacaville. She also testified that she did not call the police because she did not know what to do.

On cross-examination, appellant testified that she stopped once before reaching El Dorado County to buy a soda. She never spoke with Ashley or Stacy about the incident along the way. When they reached El Dorado County, and after learning what had happened, they all went to the home of appellant's nearest friends where, appellant testified, she "broke down" and "fell apart." They stayed the night, and the next morning appellant called the Vacaville police. On October 6, 1996, appellant turned herself in to the police along with her truck.

On November 4, 1996, appellant was charged by information with a felony violation of section 20001, subdivision (a). The information contained a special allegation that in committing this offense appellant had personally inflicted great bodily injury upon Washington within the meaning of Penal Code section 12022.7, subdivision (a), and that the offense was therefore a serious felony within the meaning of Penal Code section 1192.7, subdivision (c)(8). Appellant pleaded not guilty to the charged offense and denied the special allegation.

During the trial, after the close of the prosecution's case, appellant moved pursuant to Penal Code section 1118.1 to dismiss the special allegation. Appellant also moved to dismiss the "special circumstance" alleged pursuant to section 20001, subdivision (b)(2), even though the information did not contain such an allegation. The district attorney responded by moving to dismiss the original special allegation and to amend the special allegation to conform to the proof, i.e., to allege that Washington had suffered permanent, serious injuries within the meaning of section 20001, subdivision (b)(2). The trial court resolved the matter by dismissing the Penal Code allegation, and ruling that the available evidence justified asking the jury to determine whether it was true or not that appellant's violation of section 20001, subdivision (a) caused permanent, serious injury to Washington.

The jury ultimately found appellant guilty of the charged offense, and that Washington had suffered permanent, serious injury within the meaning of section 20001, subdivision (b)(2). The trial court thereafter denied appellant's motion for a new trial and to reduce the charged offense to a misdemeanor. At the sentencing hearing, the trial court suspended imposition of judgment and sentence and placed appellant on three years' probation on the condition, among other things, that appellant serve 365 days in county jail.

## DISCUSSION

### I.   *The Trial Court Erred by Denying Appellant's Motion to Dismiss the Special Allegation That Washington Suffered Permanent, Serious Injury Within the Meaning of Section 20001, Subdivision (b)(2)*

■ Appellant contends on appeal, as she did below, that section 20001, subdivision (b)(2) does not apply unless the defendant's failure to comply with subdivision (a) proximately causes permanent, serious injury to another person, and that there was no evidence that appellant's failure to comply with subdivision (a) proximately caused Washington's permanent, serious injuries. Appellant therefore contends the trial court erred by denying her motion to dismiss that allegation. We agree.[2]

#### A.   *Under section 20001, subdivision (b)(2), a defendant's violation of section 20001, subdivision (a) must cause permanent, serious injury*

We quote here again the pertinent language of section 20001, subdivision (b)(2): "Any violation of subdivision (a) *which results* in death or permanent, serious injury shall be punished by imprisonment in the state prison for two, three, or four years, or in the county jail for not less than 90 days nor more than one year, or by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or by both fine and imprisonment." (Italics added.) This language is clear and unambiguous and requires no interpretation. (*People* v. *Bechler* (1998) 61 Cal.App.4th 373, 377 [71 Cal.Rptr.2d 532] ["[w]here statutory language is clear and unambiguous and serves a rational purpose, there is no need for statutory construction ' "and courts should not indulge in it." . . .' " (Citations omitted.)].) It plainly

---

[2]Although the trial court had stated that the verdict form would ask the jury whether it was true or not that appellant's violation of section 20001, subdivision (a) caused permanent, serious injury to Washington, the actual verdict form only asked whether it was true or not that Washington suffered permanent, serious injury within the meaning of section 20001, subdivision (b)(2). On appeal, appellant does not contend this was error. Even if appellant had raised the issue, however, we would not reach it because, as we shall explain, the causation question should not have gone to the jury.

provides that any permanent, serious injury must be caused by a violation of subdivision (a).

Section 20001, subdivision (a) describes a standard of conduct for drivers who are involved in accidents causing injury to other persons, whether or not the drivers are responsible for the accident.[3] (See *People* v. *Jimenez* (1992) 11 Cal.App.4th 1611, 1625-1626 [15 Cal.Rptr.2d 268], disapproved on other grounds in *People* v. *Kobrin* (1995) 11 Cal.4th 416, 428, fn. 7 [45 Cal.Rptr.2d 895, 903 P.2d 1027].) "The gravamen of a section 20001 offense . . . is not the initial injury of the victim, *but leaving the scene without presenting identification or rendering aid.*" (*People* v. *Escobar* (1991) 235 Cal.App.3d 1504, 1509 [1 Cal.Rptr.2d 579], italics added; see also *People* v. *Corners* (1985) 176 Cal.App.3d 139, 148 [221 Cal.Rptr. 387] ["Although a violation of section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' "].) It thus follows that a court may not impose the penalties set forth in subdivision (b)(2) unless the defendant's failure to stop and present identification and render aid causes permanent, serious injury to the accident victim. (Cf. *People* v. *Corners, supra,* 176 Cal.App.3d at p. 148 ["[c]ommission of the crime gives rise to civil liability for damages only if the act of leaving the scene proximately causes *further* injury or death"], quoting *Brooks* v. *E.J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 679 [255 P.2d 802], original italics.)

We reject respondent's suggestion that any *accident* that results in permanent, serious, injury triggers section 20001, subdivision (b)(2). That suggestion contradicts the plain meaning of that provision.[4] Moreover, respondent's interpretation would make the degree of punishment for violating section

---

[3]Section 20003 requires a driver to furnish identifying information to "the person struck or the driver or occupants of any vehicle collided with, and . . . to any traffic or police officer at the scene of the accident," (§ 20003, subds. (a) & (b)) and "render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person." (§ 20003, subd. (a).)

Section 20004 provides: "In the event of death of any person resulting from an accident, the driver of any vehicle involved after fulfilling the requirements of this division, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by Section 20003, shall, without delay, report the accident to the nearest office of the Department of the California Highway Patrol or office of a duly authorized police authority and submit with the report the information required by Section 20003."

[4]The summary digest of the Senate bill that added subdivision (b)(2) to section 20001 states: "This bill would make it punishable by imprisonment in the state prison for 2, 3, or 4 years, or in the county jail for not to exceed one year, or by a fine of not more than $10,000, or by both, to fail to comply with the requirements of existing law, *if the accident results in death or permanent, serious injury,* as defined, thereby imposing a state-mandated local

20001, subdivision (a) entirely dependent on the degree of injury suffered by a person *in the initial accident,* and, in effect, would allow a defendant to be held liable for the severity of the accident even if the defendant did not cause the accident.[5] This interpretation not only ignores but directly contradicts the decisional law that unequivocally holds that the purpose of section 20001, subdivision (a) is to punish "not the 'hitting' but the 'running.' " (*People* v. *Corners, supra,* 176 Cal.App.3d at p. 148.) Respondent's citation to *Corners* for the proposition that section 20001 was intended to punish persons attempting to avoid civil or criminal liability for an accident is likewise unavailing. Even if this were true, it does not allow us to interpret subdivision (b)(2) contrary to its plain meaning.

B.   *The trial court erred by denying appellant's motion to dismiss because no rational trier of fact could have found beyond a reasonable doubt that appellant's violation of section 20001, subdivision (a) proximately caused permanent, serious injury**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II.   *The Trial Court Did Not Commit Any Instructional Errors**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III.   *This Matter Must Be Remanded to the Trial Court for Further Proceedings*

Since appellant's challenges to her conviction all lack merit, we must affirm her conviction. However, our conclusion that the trial court should have dismissed the special allegation under section 20001, subdivision (b)(2) requires us to vacate the trial court's imposition of three years' probation on appellant and to remand this matter to the trial court for further proceedings.

In doing so, we reject appellant's final contention that we should reduce her offense from a felony to a misdemeanor. ■ We note that the trial court denied appellant's motion for similar relief below, that appellant does

program." (Legis. Counsel's Dig., Sen. Bill No. 2374, 4 Stats. 1988 (Reg. Sess.) Summary Dig., p. 402, italics added.) Notwithstanding the import of the italicized language, we may not look to legislative history to create an ambiguity in the otherwise clear and unambiguous language of subdivision (b)(2). (See *Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].)

[5]We note that if the defendant did in fact cause the accident, then there are other criminal statutes which could apply. (See, e.g., Pen. Code, §§ 192, subd. (c) [vehicular manslaughter], 245 [assault with deadly weapon].) In addition, a civil tort action would presumably be available to the victim or, if the victim is deceased, the victim's family.

*See footnote, *ante,* page 425.

not challenge that decision on appeal, and that appellant has therefore waived her right to challenge the trial court's ruling. (See *Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353, 369 [244 Cal.Rptr. 240].) In addition, appellant fails to cite any authority, and we are unaware of any, that even suggests an appellate court has the power, independent of the trial court's power, to declare an offense to be a felony or misdemeanor.

■ Nevertheless, when a criminal statute does not define a particular offense as a felony or a misdemeanor, as in this case (see Pen. Code, § 17; § 20001, subd. (b)(1); *People* v. *Flores* (1996) 51 Cal.App.4th 1199, 1206 [59 Cal.Rptr.2d 637]), the test of whether the offense should be deemed a felony or a misdemeanor is the actual penalty imposed (*People* v. *Bury* (1996) 50 Cal.App.4th 1873, 1875-1876 [58 Cal.Rptr.2d 682]; *Meyer* v. *Superior Court* (1966) 247 Cal.App.2d 133, 137 [55 Cal.Rptr. 350]; *People* v. *Walters* (1961) 190 Cal.App.2d 98, 101 [11 Cal.Rptr. 597]). Thus, whether appellant's offense will be deemed a misdemeanor or felony will depend on the punishment imposed by the trial court on remand. Appellant may, therefore, renew her motion to reduce her offense to a misdemeanor before the trial court.

## DISPOSITION

We vacate the trial court's imposition of three years' probation on appellant, and remand for further proceedings in accordance with the views expressed in this opinion. On remand, appellant may renew her motion to have her offense reduced to a misdemeanor. Our remand is not meant as an indication of our view of how the trial court should rule on such a motion. We affirm the trial court's judgment in all other respects.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied July 17, 1998. The petitions of both respondent and appellant for review by the Supreme Court were denied October 21, 1998. Baxter, J., Werdegar, J., and Brown, J., were of the opinion that the petitions should be granted.