Filed 1/27/14  P. v. Muratalla CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD JAMES MURATALLA,<br><br>    Defendant and Appellant. | F063394<br><br>(Super. Ct. No. BF131824A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jennevee H. deGuzman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Richard James Muratalla shot Fernando Delarosa in the buttocks after driving up to Delarosa in a stolen car. He was convicted of attempted murder, assault with a firearm, carrying a loaded firearm in a public place while an active gang member, being a felon in possession of a firearm, and unlawful taking of a vehicle. Gang allegations, among other sentence enhancement allegations, were found true.

Muratalla correctly argues that under the California Supreme Court's recent decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), the evidence does not support the conviction of carrying a loaded firearm in a public place while an active gang member. *Rodriguez* held that a person cannot be found to be an active gang member without proof that he committed a crime in concert with another gang member. Because the facts here did not involve perpetration of an offense with any other gang member, we reduce the offense to carrying a loaded firearm in a public place, a misdemeanor, and remand for resentencing on that count.

Muratalla also makes the following arguments: reliance by the prosecution's gang expert on hearsay violated Muratalla's rights under the confrontation clause of the Sixth Amendment; there was insufficient evidence to support the gang enhancement findings; and defense counsel rendered ineffective assistance by conducting deficient voir dire during jury selection, choosing not to make an opening statement, not objecting to evidence of prior crimes, making an inadequate closing argument, and not objecting to the prosecutor's closing argument. We reject these contentions.

**FACTUAL AND PROCEDURAL HISTORY**

As Fernando Delarosa walked on a street near his home in Bakersfield on the afternoon of March 31, 2010, an off-white Chevrolet Camaro pulled up beside him. Muratalla got out and asked if he was Fernando Delarosa from Southside. Delarosa

2.

recognized Muratalla as Oso from Loma Bakers. Southside and Loma Bakers are both subsets of the Sureño criminal street gang, and are not rivals of one another. Among members of non-rival subsets there are sometimes conflicts between individuals, however. Delarosa said he was from Southside. Muratalla announced that he was from Loma Bakers and that he was going to follow Delarosa. Delarosa understood Muratalla's gang-oriented comments as a challenge to fight. He did not want to fight and told Muratalla to leave. Muratalla said "fuck this," drew a pistol from his pants and fired four shots. One hit Delarosa in the buttocks as he fled. The bullet exited his left thigh and came to rest in his right thigh. He ran into a barbershop and called 911.

Delarosa told officers he knew Muratalla from jail. He described the car and the gun. A week later, police found the Camaro. It had been reported stolen on the day of the shooting. Inside was a .22-caliber handgun with four spent shell casings and two live rounds in the cylinder. The car also contained a green canvas bag with more live ammunition inside. Muratalla's palm print was found on the inside of the driver's door. DNA on the green bag matched Muratalla's DNA profile and he was a possible contributor of DNA found on the gun.

The district attorney filed an information charging Muratalla with five counts: (1) attempted murder (Pen. Code, §§ 187, 664)[1]; (2) assault with a firearm (§ 245, subd. (a)(2)); (3) carrying a loaded firearm in a public place while an active member of a criminal street gang (former § 12031, subd. (a)(2)(C), now § 25850, subd. (c)(3)); (4) being a felon in possession of a firearm (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)); and (5) unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a)). For count 1, the information alleged that Muratalla attempted to kill Delarosa with premeditation and deliberation (§ 189). For counts 1 and 2, it alleged that Muratalla personally used a firearm and caused great bodily injury. (§§ 12022.53, subd. (d),

---

[1] Subsequent statutory references are to the Penal Code unless otherwise noted.

12022.5, subd. (a), 12022.7.) For counts 1, 2, 3 and 5, it alleged that Muratalla committed the offenses in association with a criminal street gang (§ 186.22, subd. (b)(1)). The gang enhancements for counts 3 and 5 were later dismissed at the People's request.

Muratalla's defense at trial was that the shooting was not attempted murder because it was not proved that he was trying to kill Delarosa. He also claimed the shooting arose from a dispute between him and Delarosa over a woman, so it was not proved that the shooting was gang-related.

The jury found Muratalla guilty on all counts and found the enhancement allegations true. On count 1, the court sentenced him to 15 years to life plus 25 years to life for the firearm enhancement. Sentences for counts 2, 3 and 4 were imposed and stayed under section 654. The court imposed a concurrent sentence of four years for count 5.

## DISCUSSION

### I. CARRYING A LOADED GUN IN A PUBLIC PLACE WHILE AN ACTIVE PARTICIPANT IN A CRIMINAL STREET GANG

As we will explain, the conviction on count 3 must be reduced to a misdemeanor. To establish the offense of carrying a loaded firearm in a public place as a felony, the People were required to prove that Muratalla was a gang member within the meaning of section 186.22, subdivision (a). The Supreme Court's holding in *Rodriguez* shows that the People did not prove this.

In count 3, Muratalla was found guilty of violating former section 12031. Subdivision (a)(1) of that section provides that a person is guilty of an offense if "he or she carries a loaded firearm on his or her person or in a vehicle while in any public place …." Under subdivision (a)(2)(C), this offense is a felony if the defendant "is an active participant in a criminal street gang as defined in subdivision (a) of Section 186.22 …." A violator of section 186.22, subdivision (a), is "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or

4.

have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang …."  Where the defendant is not a gang member and none of the other enumerated conditions are met, a violation of section 12031 is a misdemeanor.  (Former § 12031, subd. (a)(2)(G).)

*Rodriguez* deals with the meaning of the requirement that, to be a gang member under section 186.22, subdivision (a), a person must promote, further or assist in criminal conduct "by members of that gang."  Specifically, the case answers the question whether this language means the prosecution must prove the defendant committed a predicate offense, either as a principal or an aider-and-abettor, in concert with another person who was a gang member.  (*Rodriguez, supra,* 55 Cal.4th at pp. 1128, 1131.)  Some courts, including this one, have held that this was not required, and that a person could be proved to be a gang member based on a predicate offense in which he or she acted alone.  (See *People v. Salcido* (2007) 149 Cal.App.4th 356, 368, overruled by *Rodriguez, supra*, 55 Cal.4th at p. 1137, fn. 8.)  Concluding that the predicate offense must be committed in concert with another, the Supreme Court explained its reasoning as follows:

> "Section 186.22(a) speaks of 'criminal conduct by *members* of that gang.'  (Italics added.)  '[M]embers' is a plural noun.  The word 'promotes, furthers or assists' are the verbs describing the defendant's acts, which must be performed willfully.  The phrase 'any felonious criminal conduct' is the direct object of these verbs.  The prepositional phrase 'by members of that gang' indicates who performs the felonious criminal conduct.  Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct.  The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member."  (*Rodriguez, supra*, 55 Cal 4th at p. 1132)

5.

Since former section 12031, subdivision (a)(2)(C), incorporates the definition of a gang member from section 186.22, subdivision (a), the *Rodriguez* holding applies here.[2] The People in this case did not attempt to prove that Muratalla possessed the gun in concert with anyone, or that he committed any other predicate offense in concert with anyone. It follows that Muratalla cannot be guilty of possessing a loaded firearm in a public place while a gang member within the meaning of former section 12031, subdivision (a)(2)(C), and that the possession offense is not a felony in this case.

We have authority under section 1181, subdivision (6),[3] to modify the judgment to a lesser included offense. (*People v. Matian* (1995) 35 Cal.App.4th 480, 487; *People v. Bechler* (1998) 61 Cal.App.4th 373, 378-379.) Here, the error means Muratalla is not guilty of a felony under former section 12031, subdivision (a)(2)(C), but guilty of a misdemeanor under former section 12031, subdivision (a)(2)(G). We modify the judgment accordingly and remand for resentencing on count 3.

II.  DID THE TRIAL COURT VIOLATE THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT BY ADMITTING TESTIMONIAL HEARSAY EVIDENCE?

Muratalla argues that the People's gang expert relied on hearsay evidence and that this reliance violated the confrontation clause of the Sixth Amendment. This argument is based on *Crawford v. Washington* (2004) 541 U.S. 36, 53-54 (*Crawford*), in which the United States Supreme Court held that admission of "testimonial" hearsay violates the

[2]  The *Rodriguez* holding does *not* apply, by contrast, to the gang enhancement findings under section 186.22, subdivision (b). The *Rodriguez* court explicitly denied that its reasoning applied to enhancements imposed under section 186.22, subdivision (b). (*Rodriguez, supra,* 55 Cal.4th at pp. 1138-1139.)

[3]  "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed …." (§ 1181, subd. (6).)

confrontation clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. The court did not provide a definitive statement of the meaning of "testimonial" hearsay, but one definition it mentioned with approval was: "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (*Id.* at p. 52.)

The People contend that this issue has been forfeited because Muratalla did not object to the gang expert's testimony on these grounds in the trial court. We agree with Muratalla, however, that objection was unnecessary because it would have been futile. In *People v. Thomas* (2005) 130 Cal.App.4th 1202 (*Thomas*), which the trial court was bound to follow, the Court of Appeal held that the admission of similar hearsay did not contravene *Crawford*.

In *Thomas*, a prosecution gang expert testified to establish the elements of the offense of gang participation under section 186.22, subdivision (a). (*Thomas, supra*, 130 Cal.App.4th at pp. 1205, 1207.) The expert testified that much of his expertise came from statements made by other officers and by gang members. (*Id.* at p. 1207.) His opinion that the defendant was a gang member was based in part on information he found in police reports and statements of gang members who said the defendant was a member. (*Id.* at p. 1206.) The defendant argued that the admission of the gang expert's testimony about the statements of other gang members violated the confrontation clause as interpreted in *Crawford*. (*Thomas, supra*, at p. 1208.)

The Court of Appeal rejected this argument. It cited *People v. Gardeley* (1996) 14 Cal.4th 605, 618-619, which held that under Evidence Code sections 801 and 802, an expert's opinion can be based on otherwise inadmissible evidence and the expert can testify about that basis if questioned. The *Thomas* court explained that this holding survived *Crawford*:

"*Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion. *Crawford* itself states that the confrontation clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' [Citation.]" (*Thomas, supra*, 130 Cal.App.4th at p. 1210.)

This holding controlled the hearsay issue in this case. A futile objection is not necessary to preserve an issue for appellate review. (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4.) We proceed to consider the merits of the issue.

Bakersfield Police Officer Travis Harless testified for the prosecution as an expert on gangs to establish the gang-relatedness of the shooting. To prove the elements of gang-relatedness under section 186.22, subdivision (b), Harless described to the jury, and relied upon, all of the following: records of the 16 times Muratalla had been booked into the county jail; 19 offense reports involving Muratalla, three of which Harless discussed in detail; police reports and probation reports describing crimes committed by four other Loma Bakers members; and oral statements by various Loma Bakers and other gang members about the customs and activities of Sureño gangs in Bakersfield.

In contending that *Crawford* means the evidence the expert relied on and testified about should have been excluded, and that we should not follow *Thomas*, Muratalla cites *Williams v. Illinois* (June 18, 2012) 567 U.S. ___ [132 S.Ct. 2221] (*Williams*). As we will explain, there was no majority opinion in that case, and Muratalla does not rely on the case's outcome (finding no constitutional violation). He relies instead on statements in Justice Kagan's dissenting opinion (joined by three other justices) and in Justice Thomas's opinion concurring in the judgment.

Williams underwent a bench trial for rape. A technician from a state laboratory testified that she analyzed a blood sample taken from Williams after his arrest and developed a DNA profile. (*Williams, supra*, 132 S.Ct. at p. 2229.) Another prosecution

expert testified that she compared that profile with a profile developed by a commercial laboratory from semen found on the victim. (*Id.* at pp. 2229-2230.) The expert testified that the profile from Williams's blood and the profile from the semen on the victim's body matched. (*Id.* at p. 2230.) No one from the commercial laboratory testified, and the expert's implication that the data received from the commercial laboratory constituted an accurate profile developed from the semen found on the victim was based on a hearsay statement, namely, the commercial laboratory's report. (*Id.* at pp. 2230, 2235-2236.) There was also chain-of-custody evidence tending to show that the state laboratory sent the semen samples taken from the victim's body to the commercial laboratory. (*Id.* at p. 2230.)

Williams argued that the expert's implicit affirmation that the results received from the commercial laboratory were a profile of the DNA found on the victim was based on testimonial hearsay and should have been excluded under *Crawford*. (*Williams, supra*, 132 S.Ct. at pp. 2235-2236.) Justice Alito, in a plurality opinion that announced the judgment of the court but was joined only by Chief Justice Roberts and Justices Kennedy and Breyer (*id.* at p. 2227), rejected this argument on the grounds like those relied on in *Thomas*, i.e., that the hearsay was not admitted to prove the truth of the matter it asserted. (*Williams, supra*, 132 S.Ct. at p. 2236.) That the profile from the commercial laboratory was developed from the semen on the victim was "a mere premise of the prosecutor's question" which the expert "simply assumed … to be true when she gave her answer indicating that there was a match between the two DNA profiles." The import of the expert's statement was only that the two samples she compared matched each other. She was not testifying about where the samples came from, a matter that was established by other evidence. (*Ibid.*) Since it was a bench trial, there was no danger of the trier of fact failing to understand this. (*Id.* at pp. 2236-2237.)

As an alternative theory, Justice Alito's opinion also stated that the commercial laboratory's report, even if statements about it *were* admitted for the truth of the matter

asserted, was not testimonial because it "was not prepared for the primary purpose of accusing a targeted individual." (*Williams, supra*, 132 S.Ct. at p. 2243.) Instead, when the state laboratory sent the semen sample to the commercial laboratory, "its primary purpose was to catch a dangerous rapist who was still at large …." (*Ibid.*)

Justice Thomas concurred in the judgment, adding the fifth vote necessary to affirm the lower courts' conclusion. (*Williams, supra*, 132 S.Ct. at p. 2255 (conc. opn. of Thomas, J.).) He rejected, however, the plurality's view that statements from the commercial laboratory's report were not admitted for the truth of the matter they asserted. (*Id.* at p. 2256.) "[S]tatements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth," since the factfinder must decide whether the statement is true before evaluating the expert's opinion. (*Id*. at p. 2257.) That other evidence might have established the same fact is not relevant to the constitutional analysis: "The existence of other evidence corroborating the [facts forming the basis of the expert's opinion] may render any Confrontation Clause violation harmless, but it does not change the purpose of such testimony and thereby place it outside the reach of the Confrontation Clause." (*Id.* at p. 2258.)

Justice Thomas agreed with the plurality's result for a different reason: the hearsay was not testimonial, but not for the same reason the plurality thought it was not testimonial. In Justice Thomas's view, "the Confrontation Clause reaches '"formalized testimonial materials,"' such as depositions, affidavits, and prior testimony, or statements resulting from '"formalized dialogue,"' such as custodial interrogation." (*Williams, supra*, 132 S.Ct. at p. 2260.) The commercial laboratory's report "lacks the solemnity" of these types of materials and therefore was not testimonial. (*Ibid.*)

Justice Kagan wrote a dissenting opinion joined by Justices Scalia, Ginsburg and Sotomayor. (*Williams, supra,* 132 S.Ct. at p. 2264 (dis. opn. of Kagan, J.).) Like Justice

10.

Thomas, the dissenters concluded that information from the commercial laboratory's report was admitted through the expert for the truth of the matter it asserted. "[W]hen a witness, expert or otherwise, repeats an out-of-court statement as the basis of a conclusion … the statement's utility is then dependent on its truth." (*Id.* at p. 2268.) Further, the hearsay was testimonial because the commercial laboratory's report was "in every conceivable respect, a statement meant to serve as evidence in a potential criminal trial." (*Id.* at p. 2275.)

Muratalla argues that we should combine Justice Thomas's opinion with Justice Kagan's opinion to create Supreme Court authority for the view that the evidence here at issue is testimonial hearsay, the admission of which violated the confrontation clause. Those opinions, however, do not add up to that view. They might add up to five votes for the conclusion that the evidence challenged here was admitted for the truth of the matter asserted, since Justice Thomas and the dissenters agree that the evidence disclosed as the basis of an expert's opinion must be true to support that opinion. But there were *not* five votes for any view of when statements are testimonial. The plurality thought the evidence at issue was not testimonial for one reason, Justice Thomas thought it was not testimonial for a different reason, and the dissenters thought it was testimonial under yet a third rationale. The five justices withholding their votes from the plurality's position might not agree that the evidence on which Officer Harless relied was testimonial hearsay. In light of this, the various opinions in *Williams* do not amount to authority for Muratalla's position.

In any event, it is not our practice to piece together various non-majority opinions by Supreme Court justices for the purpose of anticipating what that court's conclusions might be in a case it has not considered. All we can say about *Williams* is that it upheld the admission of the testimony at issue and that there was no majority rationale. *Williams* fails to support Muratalla's position for this reason as well.

We see no adequate reason to depart from the analysis in *Thomas*, and the proper approach, in our view, is to follow *Thomas* unless and until there is authority to do otherwise. To hold that the gang expert's testimony in this case violated the confrontation clause would imply that section 186.22 prosecutions as currently practiced are unconstitutional in general, and alternative methods would be hard to find. The expert here was typical in his reliance on myriad items of hearsay from numerous police officers, probation officers and gang informants. Presenting all those witnesses at trial would be an obstacle all but insuperable. We will not impose that obstacle absent clear authority requiring it.

III. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE FINDING THAT THE SHOOTING WAS GANG-RELATED?

Muratalla argues that the evidence was insufficient to support the jury's finding on the gang enhancement allegations pursuant to section 186.22, subdivision (b).[4] "When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

To prove a section 186.22, subdivision (b) gang enhancement, the prosecution must show that the defendant committed the charged offense "for the benefit of, at the direction of, or in association with any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd.

---

[4] Muratalla also contends that the evidence was insufficient for this reason to prove the gang-membership element of possessing a loaded firearm in public while a gang member, but we need not address that argument because we are reducing that offense for the reasons already stated.

12.

(b)(1).)  To prove that the group in association with which the defendant committed the offense is a criminal street gang, the prosecution must establish that it is a group "of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [elsewhere in the statute], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."  (§ 186.22, subd. (f).)

In *People v. Sengpadychith* (2001) 26 Cal.4th 316 (*Sengpadychith*), our Supreme Court discussed the types of evidence that can establish the primary activities prong. Expert testimony can be sufficient to prove this prong.  As an example, the court described a case in which a police expert testified that the defendant "had for nine years been a member … primarily engaged in the sale of narcotics and witness intimidation …. The gang expert based his opinion on conversations he had with [the defendant] and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies."  (*Id.* at p. 324.)  Specific instances of past or current enumerated criminal acts by gang members are also relevant to the primary activities issue.  (*Id.* at p. 323.)  If all the evidence presented by the prosecution establishes only occasional commission of enumerated criminal acts by members of the defendant's gang, then the primary activities element is not proven.  (*Id.* at pp. 323-324.)

Officer Harless testified that he had been a member of the police department's gang unit for just over a year and went to the Loma Bakers' territory almost every day while on duty.  He spoke to gang members daily and often arrested them for gang-related crimes.  From these contacts, he learned the boundaries of the Loma Bakers' territory, their rivalries and alliances, and their primary activities.  Asked about the Loma Bakers' primary activities, he testified: "[T]hey commit property crimes, different kinds of thefts.

13.

They commit assaults on rivals. They commit assaults with firearms, illegal firearm possession, things like that."

Harless also testified about specific instances of criminal acts by Loma Bakers members. Rene Cazares possessed methamphetamine for sale in 2003. Mario Gomez and Michael Soto committed an assault with a deadly weapon (a baseball bat) in 2005. Andres Ibarra was a felon in possession of a firearm in 2008.

Muratalla first argues that Harless's testimony was insufficient evidence to support the primary activities element because some of his remarks showed that he did not have a proper understanding of the meaning of primary activities. Harless testified that illegal firearm possession was a primary activity of the Loma Bakers, but he later gave an affirmative answer when asked if it was "actually rare that you'll contact with a Loma Baker who has a gun." Muratalla argues that because a primary activity cannot be one that a gang's members engage in only occasionally, Harless must have misunderstood what a primary activity is and therefore his testimony about the Loma Bakers' primary activities cannot establish that element.

As the People point out, however, other testimony given by Harless explains how he could consistently say both that firearm possession is a primary activity of the Loma Bakers and that members of the Loma Bakers are not often found with firearms. Explaining how Bakersfield gangs manage their stocks of firearms to avoid detection, Harless said that gangs often "keep them in a central location, maybe a vacant house or at a person's house where they know there's nobody on probation or parole so it's less likely law enforcement is going to go to that location .…" Members wanting a gun to commit a crime then know where to go to obtain one. This testimony shows how illegal firearm possession can be a primary activity of a gang even though most of the gang's members carry a gun only infrequently. Harless therefore did not exhibit any misunderstanding of the term "primary activities" and there is no reason for us to hold

14.

that his testimony using that term should be disregarded in the sufficiency-of-evidence analysis.

Muratalla points out Harless never said the *Loma Bakers* keep guns in a central location, but that is beside the point. Muratalla's argument is that Harless's statements about the Loma Bakers' possession of guns were *inconsistent*, and therefore cannot be substantial evidence. The fact that a gang—any gang—can have guns in a central location, available to members at all times even though most members usually are not in actual possession, shows that Harless's statements were not inconsistent.

Muratalla next argues that the People did not show a large enough number of specific criminal acts by Loma Bakers members. The three prior crimes by four members, plus the current offense, make only four incidents over a period of seven years. This, Muratalla contends, proves no more than occasional commission of enumerated offenses by Loma Bakers members.

There is, however, no rule that any particular number of offenses over any particular time period must be shown to establish that committing enumerated crimes is a primary activity of a gang. As we have said, expert testimony based on field experience can be evidence sufficient to prove the primary activities element. Muratalla cites cases in which small sets of specific instances of criminal conduct were held to be insufficient to show a gang's primary activities, but in each of those cases there was no expert testimony stating that the gang committed enumerated crimes as a primary activity, or else the expert testimony lacked foundation. (*People v. Perez* (2004) 118 Cal.App.4th 151, 160; *In re Alexander L.* (2007) 149 Cal.App.4th 605, 614.)

We conclude that Officer Harless's opinion testimony and his testimony about specific offenses committed by Loma Bakers members constituted substantial evidence that the Loma Bakers' primary activities included the commission of crimes enumerated in section 186.22. Muratalla's arguments that Harless contradicted himself and did not discuss a sufficient number of specific instances are without merit.

15.

IV.    EFFECTIVE ASSISTANCE OF COUNSEL

Muratalla argues that several aspects of his trial counsel's performance amounted to a deprivation of the effective assistance of counsel guaranteed by the Sixth Amendment.  To establish ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; see also *People v. Hester* (2000) 22 Cal.4th 290, 296.)  Our review of trial counsel's actions is deferential.  To establish that counsel's actions were objectively unreasonable, the appellate record must affirmatively show that counsel had inadequate reasons for taking those actions, or else that there simply could not possibly be any good reason for them.  (*People v. Kipp* (1998) 18 Cal.4th 349, 367.)  Further, it is not necessary to determine whether counsel's challenged action was professionally unreasonable in every case.  If the reviewing court can resolve the ineffective assistance claim by proceeding directly to the issue of prejudice—i.e., the issue of whether there is a reasonable probability that the outcome would have been different absent counsel's challenged actions or omissions—it may do so.  (*Strickland v. Washington, supra*, at p. 697.)  Muratalla has not established that his counsel's alleged errors amounted to ineffective assistance either separately or cumulatively.

A.    Voir Dire

Muratalla contends that his counsel acted unreasonably in conducting voir dire during jury selection.  Specifically, he did not challenge for cause or excuse via peremptory challenge (though he left many of his peremptory challenges unused) two prospective jurors who were employed in law enforcement.  One juror was a juvenile correctional officer who had received some gang-related training and who had a brother who was a California Highway Patrol officer.  The other wrote reports and petitions at the Kern County Probation Department and also had received gang-related training.  Both

16.

served on the jury. Another prospective juror was a nurse employed by the California Department of Corrections and Rehabilitation. Muratalla's counsel did not challenge her and she became an alternate, and ultimately served as a juror when a seated juror was excused before opening statements. More generally, Muratalla says counsel unreasonably failed to question jurors to find indications of bias. He says counsel did not ask any prospective jurors whether they had an inclination to favor testimony by law enforcement personnel, did not follow up when a prospective juror, who ultimately served on the jury, said her daughter had been a victim of a violent crime but her ability to serve would not be affected, and did not ask the prospective alternates any questions. The jury foreperson was not asked whether anyone close to her worked in law enforcement or had been a victim of a violent crime.

The record does not disclose trial counsel's reasons for allowing the correctional officer, the probation department employee and the prison nurse to serve. As we have said, counsel's actions cannot be found unreasonable based on a silent record unless there simply could be no valid reason for them. The exercise of peremptory challenges is """"inherently subjective and intuitive [and] an appellate record will rarely disclose reversible incompetence in this process."""" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 48.) There could have been other reasons why counsel found these three jurors acceptable or even desirable compared with others who might have served had these three been excused.

Similarly, the record does not show that there were no sound tactical reasons for counsel's decision to refrain from asking certain questions about bias in favor of law enforcement personnel. It has been held that even asking *no* questions can be a sound tactical approach. "For example, questioning by other parties may convince counsel that the juror would be favorable for the defense, and that further questions might only antagonize the juror or give the prosecution a reason to use a peremptory challenge or even grounds for a challenge for cause." (*People v. Freeman* (1994) 8 Cal.4th 450, 485;

17.

see also *People v. Horton* (1995) 11 Cal.4th 1068, 1123 [professionally unreasonable conduct not shown where counsel's decision not to ask prospective jurors about racial bias could have been result of sound tactical decision].)

Muratalla also has not shown prejudice arising from counsel's actions during jury selection. "Nothing in the record suggests the actual jury was biased, or that it is reasonably probable a different jury would have been more favorably disposed towards defendant." (*Freeman, supra*, 8 Cal.4th at p. 487.)

For these reasons, we conclude that Muratalla has not established ineffective assistance of counsel based on his counsel's conduct during jury selection.[5] Cases he cites do not persuade us otherwise. In *Winn v. State* (Tex.App. 1993) 871 S.W.2d 756, 763, the appellate court concluded that defense counsel's performance in not asking certain questions "demonstrates a lack of preparation." The record in this case, by contrast, does *not* demonstrate ineffective assistance; rather, it simply fails to disclose the reasons for counsel's actions, fails to prove that they were not based on sound tactical considerations, and fails to establish prejudice. In *Walker v. State* (Tex.App. 2006) 195 S.W.3d 250, 256-257, a prosecution for resisting arrest, six prospective jurors identified themselves as working or having close relatives who worked in law enforcement. When the prosecutor asked them whether this background would affect them as jurors, one said it depended on the situation, and several others told stories about officers being injured or killed by suspects resisting arrest. Defense counsel asked no questions at all. Three of the people with law enforcement connections served as jurors. In a hearing on a new trial motion, defense counsel said it never occurred to him to ask whether the prospective jurors would be inclined to find law enforcement witnesses more credible and said that since he had been a law enforcement officer himself, he was certain they would not be

---

[5]     Muratalla's claim of ineffective assistance in conducting voir dire may be more appropriately raised in a petition for writ of habeas corpus. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

18.

biased. There is nothing similar in this case. Muratalla's defense counsel never stated any reasons for his tactical decisions, let alone obviously inadequate ones like these. Finally, in *People v. Wagner* (N.Y.App. 1984) 104 A.D.2d 457, 459, among numerous other problems (e.g., he "displayed a forgetfulness of basic principles of criminal law and procedure" and his "opening statement was essentially irrelevant and incoherent"), defense counsel did not challenge any prospective juror peremptorily or for cause, and the result was a jury that "resembled 'a miniature police force,' in that 9 of the 12 jurors had friends or relatives on various police forces, and one juror had two sons who were police officers …." This case is not similar.

### B.     Opening Statement

Next, Muratalla contends that his trial counsel rendered ineffective assistance by not making an opening statement. This argument is without merit. As Muratalla concedes, trial counsel's decision "whether to waive opening statement" is a matter "of trial tactics and strategy which a reviewing court generally may not second-guess." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1059.) Muratalla contends that his trial counsel could not have had a strategic reason for presenting no opening statement because he had already indicated at a prior hearing that his strategy would be to challenge the prosecution's proof of intent and gang-relatedness, and there was no reason not to call the jury's attention to these points in an opening statement. Even under these circumstances, however, it could be a sound tactic to wait until after the prosecution presented its evidence to make a final decision about how best to defend the case. The record shows neither that it was professionally unreasonable not to make an opening statement, nor that there is a reasonable probability that making one would have led to a different outcome.

### C.     Prior Crimes Evidence

Muratalla argues that several items of evidence revealed prior crimes of which Muratalla had been suspected or accused, and that this evidence was inadmissible and

19.

prejudicial. He says his trial counsel rendered ineffective assistance by not objecting to it.

As part of his expert testimony, Officer Harless testified that he reviewed 16 records of Muratalla being booked in to jail. These records supported Harless's opinion that Muratalla was a gang member because, in each booking, Muratalla "claimed South, Southside, Bakers or something to that effect" so that he would be housed away from Norteños. Muratalla says the booking records were irrelevant, and Harless should not have been permitted to mention them, because they showed only that Muratalla was a Sureño—not a Loma Baker—and the prosecution's theory was specifically that he was a Loma Baker. We disagree. The Loma Bakers are a subset of the Sureños. Evidence that someone is a Sureño has a tendency in reason to support the proposition that he is a member of a particular subset since, logically, he could not be a member of the subset unless he were also a Sureño. For this reason, each booking record was admissible. Further, all were probative. A current denial of gang membership is more effectively undermined by many past instances of membership affirmance, spanning a significant period of time, than by a few past instances. The fact that evidence tends to strongly prove a charged allegation, rather than weakly, does not show that it is substantially more prejudicial than probative under Evidence Code section 352. We do not think that statute entitled Muratalla to hide most of his many admissions of gang membership in order to avoid revealing his many arrests to the jury. Trial counsel's failure to object was not professionally unreasonable because the evidence was relevant and admissible as a basis for Harless's opinion.

A similar analysis applies to Muratalla's argument that the booking records should have been objected to as cumulative because Harless testified that he also knew Muratalla was a Sureño gang member from Bakersfield from his tattoos. The tattoos were comparable to admissions on Muratalla's part that he was a gang member. A larger number of admissions adds weight to the prosecution's contentions, and does so fairly.

20.

Evidence that a gang member has frequently made a point of declaring to the world that he is a gang member is not *unduly* prejudicial evidence in support of gang allegations.

Muratalla discusses seven other points on which he believes his trial counsel should have raised the objections that evidence was irrelevant, was inadmissible hearsay, was substantially more prejudicial than probative under Evidence Code section 352, or all three:

1.  Harless mentioned the 19 offense reports he reviewed, but said only four of these were significant for purposes of his expert testimony. Muratalla maintains that the existence of the other 15 was irrelevant and prejudicial.

2.  Harless discussed Muratalla's contact with police on August 21, 2009, saying it was significant because police found Muratalla in the company of a Loma Baker member. Harless went on, however, to reveal other details of that contact: Muratalla put something in his mouth which the officers believed was heroin; his companion was in possession of a counterfeit check; and Muratalla and his companion were both arrested for parole violations at that time. Muratalla says that all these details were irrelevant because Harless said the contact was significant only because Muratalla was found with another gang member; and they were prejudicial because they were evidence of Muratalla's bad character.

3.  Harless said Muratalla's April 1, 2005, contact with police was significant for purposes of his expert opinion because Muratalla was arrested for vehicle theft, which Harless said was a primary activity of the Loma Bakers. But Harless went on to say that Muratalla had been disturbing the peace before the officers arrived, that he discarded a methamphetamine pipe when they arrived and was arrested for possession of drug paraphernalia, and that he was in possession of counterfeit money. Again, Muratalla argues that this additional information was irrelevant and prejudicial.

4.  Further, Muratalla was never charged with vehicle theft as a result of the April 1, 2005, contact, so the evidence of that contact was not even relevant to show he committed a vehicle theft.

5.  Even if Muratalla did commit a vehicle theft, he argues, that would not show he is a member of a gang that commits vehicle thefts. Many people commit vehicle thefts without being gang members.

6.  Harless said the report of Muratalla's contact with police on April 14, 2004, was significant for purposes of his expert opinion because Muratalla was found in possession of a knife and arrested for carrying a concealed weapon, weapon

21.

possession being a primary activity of the Loma Bakers. Again, Muratalla argues that the evidence did not support Harless's opinion. Offenses that form the primary activities of gangs are often committed by people who are not gang members.

7. In a recorded statement, the victim, Delarosa, said he participated in a beating administered to Muratalla as gang discipline on the orders of gang leaders who were dissatisfied with Muratalla's performance as a gang member. Muratalla had been "beating people up too much." The recording was hearsay admissible as a prior inconsistent statement, because Delarosa testified that he did not remember the incident. Muratalla argues, however, that the reason for the gang discipline—that Muratalla was beating people up too much—was not part of the prior inconsistent statement, and was prejudicial.

Assuming meritorious objections existed on each of these points, we conclude that Muratalla has not shown he was prejudiced by counsel's failure to make them. He says he was prejudiced because evidence that should have been excluded was admitted and tended to show he had a bad character, making the jury more likely to find him guilty as charged, more likely to find him to be a gang member and more likely to find the offense to be gang-related. By arguing for a lesser offense, however, Muratalla effectively conceded that he shot Delarosa and argued only that he had no intent to kill him. There was nothing about Muratalla's prior arrests and offenses that tended to show he was the kind of person who intended to kill others. As for the gang allegations, there was very powerful admissible evidence in support of them. Muratalla had gang tattoos, admitted he was a gang member to booking officers 16 times, was identified by Delarosa as a Loma Baker, and received gang discipline in jail. He initiated the confrontation with Delarosa using the language of a gang challenge.[6] Harless's expert testimony supported

---

[6] Muratalla says the evidence of the gang-relatedness of the shooting is "far from compelling" based on two remarks Delarosa made in his recorded police interview. First, Delarosa said Muratalla's comments initiating the confrontation were an attempt "to make sure I was who I … am." Second, when asked if the Loma Bakers and Southside Bakers "have a beef going on or if it's just between you and him," Delarosa said, "Yeah. It was between us." Muratalla says both of these remarks mean the confrontation between the two men was personal and not gang-related. In so arguing, Muratalla overlooks Delarosa's trial testimony that Muratalla initiated the confrontation by asking

the conclusion that it was a gang-related confrontation. And there was no reasonable doubt that the Loma Bakers are a criminal street gang. There is no reasonable probability that Muratalla would have obtained a better outcome if his counsel had made objections on these issues.

D. Defense Counsel's Closing Argument

Defense counsel's closing argument developed two themes: the evidence did not show that Muratalla had an intent to kill Delarosa and the conflict between the two men was over a woman and was not gang-related.

Muratalla now argues that this closing argument was constitutionally inadequate because counsel could have done a better job of developing these themes. He presents a list of details he feels trial counsel should have focused on:

1. Defense counsel did not emphasize the elements necessary for a finding of premeditation and deliberation; he should have done so in response to the prosecutor's argument that premeditation and deliberation are like deciding whether to proceed through a yellow light.

2. Defense counsel did not reiterate the jury instruction stating that if Muratalla's intent were subject to two reasonable interpretations, the jury was required to adopt the interpretation under which Muratalla was less culpable.

3. Defense counsel did not point out certain facts arguably undermining the claim that he intended to kill and supporting the view that he acted thoughtlessly and impulsively: Muratalla left the scene with bullets left in his gun and Delarosa still standing; there was no evidence that Muratalla expected to encounter Delarosa that day and brought a gun with a plan to shoot Delarosa in mind; Muratalla could have been carrying the gun for protection; Delarosa said Muratalla looked "tweaked out" this was not suggestive of a cold and calculating mood; Delarosa told Muratalla to leave and Muratalla responded by saying "fuck this" and drawing the gun.

---

what gang Delarosa was from (Southside Bakers) and saying what gang he was from (Loma Bakers), and that Delarosa understood this, in the gang context, as a challenge to fight. In our view, this testimony was indeed compelling evidence that the confrontation was gang-related, while the statements from the police interview that Muratalla relies on were equivocal and did not seriously undermine Delarosa's trial testimony.

23.

4. Defense counsel did not emphasize facts that could undermine the theory that the shooting was gang-related: When Muratalla approached Delarosa and asked if he was Fernando Delarosa from the south side, he could have simply been trying to ascertain Delarosa's identity, not challenging him to engage in a gang conflict; Delarosa had never had a conflict with a Loma Baker before and while he had seen Loma Bakers members "trying to gang bang on" Southside Bakers, he classified these as personal conflicts, not gang conflicts; although Delarosa knew Muratalla as "Oso from Loma Bakers," it remained possible that (unknown, somehow, to Delarosa) Muratalla and Delarosa were actually both members of Southside Bakers.

Muratalla's critique of the fine-grained details of counsel's closing argument does not establish ineffective assistance of counsel. Our review of the professional reasonableness of counsel's tactical choices is deferential, and in the absence of record evidence of the reasons for counsel's approach, we do not find reversible error unless there simply could be no good reason for it. The record does not reveal counsel's reasons, and it is not the case that there could be no good reason for presenting the defense themes in a briefer manner that Muratalla now wishes his counsel had done. Further, Muratalla's critique does not demonstrate prejudice. We cannot say it is reasonably probable that the jury would have reached a different verdict if defense counsel's closing argument had focused on the details Muratalla now lists.

E. Failure to Object to Prosecutor's Closing Argument

An eyewitness, Sergio Merino, testified that he saw Muratalla pointing the gun "[d]irectly at him," i.e., at Delarosa. In his summation, defense counsel made remarks that appeared to be intended to undermine this testimony. He said that because the police searched for and did not find evidence of bullet strikes on buildings downrange from Delarosa, the barrel of Muratalla's gun must not have been pointed "in the direction of the person running away," i.e., must not have been pointed toward Delarosa. In his rebuttal argument, the prosecutor made the following remarks, apparently in response to these comments by defense counsel:

24.

"Now, in this case, you're only allowed to rely upon the evidence. You're not allowed to rely upon conjecture—oh, he must have [been] shooting in the air. No.

"Sergio Moreno got on the stand. He was asked where was the gun pointed. Directly at the person running away. You have an eyewitness to the event telling you exactly where the gun was pointed.

"Okay. Whether a tiny little .22 shell was found in a wall, that's— you can't get the inference from that that he was shooting wildly into the air.

"The direct evidence of an eyewitness tells you where Mr. Muratalla was shooting. That is what you can rely upon.

"There's no evidence that he was shooting in the air, none whatsoever. You cannot rely upon that.

"You can rely upon the evidence, the documents, the photos, the testimony—not conjecture, not stuff that's just made up."

Muratalla now argues that these remarks misstated the law by implying that the jury could not rely upon a *lack* of evidence in concluding that there was a reasonable doubt of his guilt. (See *People v. Simpson* (1954) 43 Cal.2d 553, 566 ["[R]easonable doubt … may well grow out of the lack of evidence in the case as well as the evidence adduced."].) He says his counsel rendered ineffective assistance by not making an objection to that effect.

We do not see how an objection on this point could have made any difference to the jury. It is undisputed that a bullet from Muratalla's gun struck Delarosa. Muratalla does not suggest that the bullet ricocheted. This means the gun necessarily was fired directly at Delarosa at least once. If all four shots had missed, Muratalla could rationally have made an argument that he never pointed the gun directly at Delarosa, and then used that argument to support a further argument that he had no intent to kill. As it was, however, the eyewitness's testimony that the gun was pointed "directly at" Delarosa only stated what was already obvious from the undisputed facts. An objection to the prosecutor's comments about evidence versus conjecture, even if sustained, therefore

25.

could not rationally have had any impact on the jury's conclusions about whether the gun was fired directly at Delarosa. It follows that there is no reasonable probability that Muratalla would have obtained a better outcome if his counsel had objected.

Muratalla also briefly mentions that during his rebuttal argument, the prosecutor implied that any shooting in which a victim is injured is always attempted murder and never assault with a firearm. He does not present any arguments or cite any authorities on this subject. He also does not mention that the prosecutor made similar comments during his initial closing argument, that defense counsel objected, that the objection was sustained, or that defense counsel explicitly criticized the prosecutor on this point in his closing statement. Because Muratalla does not present any arguments or cite any authorities to support this subject, we conclude that he has forfeited this issue. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366 fn. 2. [Points that are not supported by analysis of the facts and citation of legal authority are deemed forfeited.].)

## DISPOSITION

On count three, the felony of carrying a loaded firearm in public while being an active gang member (former § 12031, subd. (a)(2)(C)), the judgment is modified to reduce the offense to the misdemeanor of carrying a loaded firearm in public (former § 12031, subd. (a)(2)(G)). The case is remanded to the trial court for resentencing on that count. The judgment is otherwise affirmed.

                                              _____

                                                     Franson, J.

WE CONCUR:


_____

Levy, Acting P.J.


_____

Kane, J.